# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TIFFANY J.,[1] | : | Case No. 2:24-cv-04106 |
| | : | |
| Plaintiff, | : | District Judge Edmund A. Sargus |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATION[2]

---

Plaintiff filed an application for Disability Insurance Benefits in April 2021.

Plaintiff's claim was denied initially and upon reconsideration. After a hearing at

Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not

eligible for benefits because she was not under a "disability" as defined in the Social

Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff

subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

Court to affirm the non-disability decision. For the reasons set forth below, the

---

[1] See S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] See 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

undersigned Magistrate Judge recommends that the Commissioner's decision be
AFFIRMED.

## I.      BACKGROUND

Plaintiff asserts that she has been under a disability since January 1, 2017. At that
time, she was thirty-nine years old. She was forty-five years old on the date last insured
of June 30, 2023. Accordingly, Plaintiff was considered a "younger person" under the
Social Security regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has a "high school
education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No.  7) is summarized in
the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 166-96), Plaintiff's Statement of
Errors ("SE," Doc. No. 10), the Commissioner's Memorandum in Opposition ("Mem. In
Opp.," Doc. No. 12), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 13). Rather
than repeat these summaries, the Court will discuss the pertinent evidence in its analysis
below.

## II.     STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to
individuals who are under a "disability," among other eligibility requirements. *Bowen v.
City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a).
The term "disability" means "the inability to do any substantial gainful activity by reason
of any medically determinable physical or mental impairment which . . . has lasted or can
be expected to last for a continuous period of not less than 12 months." 20 C.F.R.
§ 404.1505(a).

2

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite
conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal
criteria—may result in reversal even when the record contains substantial evidence
supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651
(6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the
Commissioner will not be upheld where the SSA fails to follow its own regulations and
where that error prejudices a claimant on the merits or deprives the claimant of a
substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even
if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*,
896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application
for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in
the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following
findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff engaged in substantial gainful activity from the alleged onset date of January 1, 2017 through December 31, 2017. Plaintiff did not engage in substantial gainful activity from June 1, 2018 through the date last insured of June 30, 2023. |
| Step 2: | Through the date last insured, she had the severe impairments of osteoarthritis of the left knee, lumbar degenerative disc disease with disc herniation and radiculopathy, fibromyalgia, and adjustment |

4

disorder with mixed anxiety and depressed mood and obsessive-compulsive disorder.

Step 3:     She did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following limitations: could never climb ladders, ropes, or scaffolds but could occasionally climb ramps and stairs, and could occasionally balance, stoop, crouch, kneel, and crawl; could never be exposed to unprotected heights, hazardous machinery, or commercial driving; could perform only simple, routine tasks involving simple work-related decisions; could have no more than occasional interactions with supervisors, coworkers, and the general public; and could tolerate few changes in a routine work setting.

She was unable to perform any of her past relevant work.

Step 5:     Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed.

(Decision, Doc. No. 7-2 at PageID 172-91.) These findings led the ALJ to conclude that Plaintiff did not meet the definition of disability and so was not entitled to benefits. (*Id.* at PageID 191-92.)

## B.     State Agency Psychological Consultants

State agency psychological consultant Jennifer Swain completed a Disability Determination Explanation form in July 2021.[3] (AR, Doc. No. 7-3 at PageID 233-38.) Dr.

---

[3] There are no credentials after Jennifer Swain's name, but she listed a Medical Specialty Code of 38, which indicates a specialty in psychology. (AR, Doc. No. 8-3 at PageID 91, 95; *see also* DI 28084.050 Signatures, Dates, Specialty Name and Specialty (Items 25 to 28 and Items 30 to 33), SSA POMS DI 28084.050 (effective Oct. 27, 2015) (last updated Dec. 7, 2018).)

Swain found moderate impairment in the "B Criteria" areas of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (*Id.* at PageID 234.) She found no impairment in the area of understanding, remembering, or applying information. (*Id.*) In the area of sustained concentration and persistence, Dr. Swain indicated moderate limitation in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to "complete a normal workday and workweek without interruptions from psychologically[-]based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.* at PageID 237.) She opined that Plaintiff was "able to concentrate and persist to do simple, short-cycle tasks consisting of [one to three] steps in a setting without demand for fast pace or high production." (*Id.*)

As to social functioning, Dr. Swain found moderate limitation in Plaintiff's ability to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR, Doc. No. 7-3 at PageID 237.) Dr. Swain opined that Plaintiff was "able to interact with others on a superficial basis." (*Id.*) In the final area of adaptation, Dr. Wain found moderate limitation in the ability to respond appropriately to changes in the work setting. (*Id.* at PageID 237-38.) She opined that Plaintiff could "adapt to occasional changes in a routine setting" and that "[m]ajor changes should be implemented gradually." (*Id.* at PageID 238.)

Karla Delcour, Ph.D. reviewed the updated record at the reconsideration level in January 2022 and affirmed Dr. Swain's assessment. (AR, Doc. No. 7-3 at PageID 244-49.)

6

The ALJ concluded that the state agency psychological consultants' findings were "mostly persuasive." (Decision, Doc. No. 7-2 at PageID 188.) But the ALJ did not adopt verbatim the consultants' functional discussion, explaining as follows:

> [T]hey gave no specific definition to "superficial" interactions with others (which the undersigned commutes to a reduced occasional frequency of interacting during a workday), the step-based and non-fast pace of work tasks that exceeds support from the available medical evidence and remains inconsistent with the expanded record at the hearing level, and similarly the opined need for even "major" workplace changes to be explained or gradually introduced that is not congruent with their finding of no limitation in understanding or memory abilities or by the conservative and beneficial treatment prescribed via antidepressant and antianxiety medications and a nightly sleep aid.

(*Id.*) The ALJ further explained why he did not adopt the consultants' limitation for superficial interactions with others:

> Importantly, the State agency [psychological consultants] did not find [Plaintiff] limited to both superficial types of interactions and reduced frequency of interactions in a workday, but instead only offered the former term as the extent of mental functional limitation in the area of engaging in work-related social interactions. While the undersigned is aware that, per the representative's providing a redacted copy of a remand order from the Appeals Council pertaining to another disability claimant, that at least one Administrative Appeals Judge views the term superficial as readily definable by its common dictionary meaning or as "shallow or cursory" (see Ex. 15E/4-5), in practice and application to an individual's maximum mental functional abilities to interact with others in a work setting and over the course of a workday, such term warrants a more precise meaning, dimension, and scope. In cases, as here, where no definition is provided for the term superficial but also frequency of interaction with others is not found to be limited by the State agency [psychological consultants], the undersigned has looked to the underlying medical and other evidence to determine whether to accept such term conveying a qualitative reduction in types of social interactions with others, or whether a reduced frequency of interactions in a workday is better supported by such evidence and, in turn, remains consistent with the additional evidence received at the hearing stage of the claim(s).

7

(*Id.* at PageID 188-89.)

The ALJ reasoned that evidence of Plaintiff's "family living situation, indicated activities outside the home[,] and her unremarkable behavior during encounters with her mental health professionals in year 2021 and with her primary care doctor throughout" warranted a limitation to occasional social interactions. (Decision, Doc. No. 7-2 at PageID 189.) The ALJ explained that such a limitation was "both better supported by the medical and other evidence available to and considered by the State agency [psychological consultants], and more consistent with the additional evidence received after the time of their reviews" than the consultants' proposed limitation to superficial social interactions. (*Id.*)

Finally, the ALJ explained why the other limitations that the consultants suggested were more persuasive:

> In remainder, the moderate limitations in broad and specific mental functioning and Dr. Swain's other assessed mental residual functional abilities—i.e., simple, routine ("short- cycle") tasks and few (occasional) changes in a routine work setting—are more persuasive because they are well supported by the summaries and analyses of the 2020- 2021 medical evidence, including clinical observations of depressed and/or anxious mood contrasting with full affect, average demeanor and cooperative behavior, and (at times) intact attention (see Ex. 1A/2-3,5; 4A/4); and because they remain, at the very least, consistent with the additional medical evidence received at the hearing stage that shows null (0) scores on PHQ-2 for any present reports of depression, no mentioned anxiety or panic attacks or chronic and significant difficulty sleeping, or any medication pursued from her primary care physician over 2022-2023 beyond the nightly Seroquel medication (see generally Ex. 6F).

(Decision, Doc. No. 7-2 at PageID 189.)

## IV.     LAW AND ANALYSIS

Plaintiff asserts just one error: "The ALJ failed to account for the state agency psychologists' opinion limiting [Plaintiff] to superficial interaction." (SE, Doc. No. 10 at PageID 803.) For the reasons discussed below, Plaintiff's assertion is not well-taken and the undersigned recommends that the ALJ's decision be affirmed.

### A.     Applicable Law

It is well-established that determination of the residual functional capacity (RFC) is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity'"). A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R.

§ 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v.*

*Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from *other* providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00672-CHL, 2024 WL 1199025, at *6-7 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r*

*of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, at *6 (S.D. Ohio Mar. 24, 2023) (Jolson, M.J.)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[4] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13,

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

**B.** **The ALJ's Conclusions Regarding The State Agency Psychological Consultants' Findings Are Supported By Substantial Evidence, And The ALJ Did Not Err By Failing To Include Additional Mental Limitations In The RFC.**

Plaintiff does not allege that the ALJ failed to follow the requirements of 20 C.F.R. § 404.1520c when he evaluated the state agency psychological consultants' prior administrative medical findings. Instead, Plaintiff's sole assertion of error is that the ALJ erred by failing to account for the consultants' limitation to superficial interaction. (SE, Doc. No. 10 at PageID 803.) Plaintiff asserts that the ALJ erred because although he found the state agency psychological consultants' opinions "mostly persuasive" except for the limitation to superficial social interactions, "the ALJ's decision to substitute 'occasional' for 'superficial' was legally incorrect, and the ALJ's reasoning for supporting his decision was not supported by substantial evidence." (SE, Doc. No. 10 at PageID 803.). For the reasons discussed below, Plaintiff's alleged error is without merit.

As noted, the consultants opined that Plaintiff was limited to interacting with others "on a superficial basis." (AR, Doc. No. 7-3 at PageID 237, 248.) The ALJ did not

13

agree with this limitation, reasoning that the consultants "gave no specific definition to 'superficial' interactions with others" and concluding that the limitation was unsupported by the record. (Decision, Doc. No. 7-2 at PageID 188-89.) The ALJ instead limited Plaintiff to "occasional interactions with supervisors, coworkers, and the general public." (*Id.* at PageID 177.) The undersigned concludes that the ALJ adequately explained why he did not adopt the superficial interaction limitation in the RFC, and his conclusions are supported by substantial evidence.

As an initial matter, it is important to emphasize that the ALJ was not required to adopt the consultants' opinion wholesale. The RFC is not required to "recite medical opinions verbatim[;] rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC." *McIntosh v. Colvin*, No. 16-cv-0963-JAH-BGS, 2018 U.S. Dist. LEXIS 30778, at *15 (S.D. Cal. Feb. 26, 2018) (citation omitted); *c.f. Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute his opinions for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding.").

The ALJ also correctly stated that the term "superficial" was undefined. The psychological consultants did not define the term "superficial" in their assessments. (AR, Doc. No. 7-3 at PageID 234-38; 244-49.) The Social Security Administration's policies and regulations also do not define the term "superficial." Social Security Ruling (SSR) 83-10 provides definitions of terms and concepts that are frequently used in evaluating

14

disability.[5] SSR 83-10, 1983 WL 31251 (S.S.A. January 1, 1983). "Frequent" is defined as "occurring from one-third to two-thirds of the time." *Id.* at *6. "Occasional" is defined as occurring "***from very little*** up to one-third of the time." *Id.* at *5 (emphasis added). The SSR does not define "superficial." The term is also not defined in the Dictionary of Occupational Titles (DOT), Social Security regulations, other SSRs, or HALLEX.

It is true, as Plaintiff notes, that this Court has held that the term "occasional contact" refers to the ***quantity*** of time spent with individuals, and the term "superficial contact" refers to the ***quality*** of the interactions. *See, e.g., Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) (Vascura, M.J.); *see also Mabry-Schlicher v. Comm'r of Soc. Sec.*, No. 24-3811, 2025 U.S. App. LEXIS 14028, at *11-14 (6th Cir. June 6, 2025) (upholding a remand order that required the ALJ to adopt an RFC limitation for superficial interaction).

However, the Court need not decide whether the ALJ erred by declining to consider these cases. The ALJ is not required to adopt verbatim the opinions and findings of medical providers and experts when formulating the RFC. *See, e.g., Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("[T]here is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."). Furthermore, the ALJ adequately explained the basis for his RFC finding. *See Anissa H. v. Comm'r of Soc. Sec.*,

---

[5] Although SSRs do not have the same force and effect as statutes or regulations, they "are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

No. 2:21-cv-5315, 2023 U.S. Dist. LEXIS 23150, at *24 (S.D. Ohio Feb. 9, 2023)

(Litkovitz, M.J.) ("The issue is whether the ALJ explained the basis for the RFC

determination."), *report and recommendation adopted*, No. 2:21-cv-5315, 2023 U.S.

Dist. LEXIS 54657 (S.D. Ohio Mar. 29, 2023) (Graham, D.J.) (citation omitted).

Specifically, the ALJ explained that he did not adopt the superficial limitation

because the consultants did not define the term, which was an accurate description of the

record. (Decision, Doc. No. 7-2 at PageID 188; AR, Doc. No. 7-3 at PageID 318, 248.)

The ALJ considered but did not follow an Appeals Council remand order that defined the

term "superficial interaction",[6] reasoning that "in practice and application to an

individual's maximum mental functional abilities to interact with others in a work setting

and over the course of a workday, such term warrants a more precise meaning,

dimension, and scope." (Decision, Doc. No. 7-2 at PageID 188.) The ALJ further

explained that the consultants "did ***not*** find the claimant limited to both superficial types

of interactions ***and reduced frequency*** of interactions in a workday, but instead only

offered the former term as the extent of mental functional limitation in the area of

engaging in work-related social interactions." (*Id*. (emphasis in original).)

Despite the lack of clarity regarding the term "superficial interaction," the ALJ

nevertheless considered whether evidence in the record warranted a limitation regarding

either the quantity of time spent with individuals or the quality of those interactions.

---

[6] The remand order stated: "'[S]uperficial interaction' is a term that is readily defined, understood and
applicable to a work setting, as it speaks to the depth, kind and quality of social interactions, and indicates
that the claimant could not have sustained more than shallow or cursory interactions with others, i.e.,
coworkers, the general public, and/or supervisors." (Doc. No. 7-6 at PageID 458-59.)

(Decision, Doc. No. 7-2 at PageID 188-89.) The ALJ concluded that "[b]ased on [Plaintiff's] family living situation, indicated activities outside the home[,] and her unremarkable behavior during encounters with her mental health professionals in year 2021 and with her primary care doctor throughout," the RFC only needed to limit Plaintiff to occasional interactions. (Decision, Doc. No. 7-2 at PageID 189.) The ALJ's conclusions about Plaintiff's social functioning are supported by substantial evidence and should therefore be affirmed.

Plaintiff argues that the ALJ failed to provide a logical bridge to explain the reasoning behind his conclusions, and that "[t]he ALJ's reasoning for substituting 'occasional' for 'superficial' interaction is insufficient." (SE, Doc. No. 10 at PageID 807-09; *see also* Reply, Doc. No. 13 at PageID 826-27.) According to Plaintiff:

> The ALJ did not explain how [Plaintiff's] living situation aligned more closely with a limitation to occasional interaction. The ALJ did not explain how [Plaintiff's] activities of daily living aligned more closely with a limitation to occasional interaction. The ALJ did not explain how the treatment record aligned more closely with a limitation to occasional interaction.

(SE, Doc. No. 10 at PageID 807.) The undersigned disagrees. As noted, the ALJ was not required to adopt the consultants' recommended limitations verbatim. The ALJ provided an explanation—which is supported by substantial evidence—for why he rejected the proposed limitation for superficial interactions. In addition, the ALJ discussed Plaintiff's social functioning elsewhere in the decision and explained why he only limited Plaintiff to occasional interactions with individuals.

For example, the ALJ found at Step Three that Plaintiff had moderate limitation in the "B Criteria" area of interacting with others. (Decision, Doc. No. 7-2 at PageID 175-76.) The ALJ acknowledged Plaintiff's testimony at the June 2023 hearing that she had difficulty getting along well with others at times, due to a combination of pain and depression which caused irritability, as well as difficulty being around groups of people. (*Id.* at PageID 175 (citing AR, Doc. No. 7-2 at PageID 218).) But the ALJ also pointed out that Plaintiff did not allege any difficulty with getting along with others in the July 2021 Function Report. (*Id.* (citing AR, Doc. No. 7-6 at PageID 406).) The ALJ also noted that Plaintiff regularly interacted with her family in person and by telephone. (*Id.* at PageID 175-76 (citing AR, Doc. No. 7-6 at PageID 407).) Although the ALJ cited to counseling records that showed abnormalities such as an anxious and depressed mood and affect, the ALJ cited normal mental status findings in the psychiatric progress notes that included an average demeanor, no remarkable clinical features of anxiety, cooperative behavior, and a full affect. (*Id.* at PageID 176 (citing AR, Doc. No. 7-7 at PageID 506, 513, 518, 525, 594, 604, 608).)

The ALJ also cited to Plaintiff's reported daily activities and medical records in his analyses of the other "B Criteria" areas of functioning. (Decision, Doc. No. 7-2 at PageID 175-77.) The ALJ acknowledged Plaintiff's subjective complaints about difficulty being around others, difficulty handling changes, and a "primarily pain-related need for assistance" with personal hygiene tasks such as bathing and dressing. (*Id.*) The ALJ cited to medical records that showed abnormalities such as anxious and/or depressed moods. (*Id.*) The ALJ balanced this evidence with records that documented Plaintiff's

18

abilities in these areas, such as caring for her children, being able to work with treatment providers, taking prescribed medication, and being able to perform some activities of daily living, such as preparing simple meals and household cleaning. (*Id.*) The ALJ also cited normal mental status findings that included a normal mood, a full affect, an average demeanor, adequate dress and hygiene, and no thoughts of harming herself. (*Id.*)

Additionally, the ALJ provided a detailed summary of Plaintiff's medical records and mental health treatment history in the RFC analysis. (Decision, Doc. No. 7-2 at PageID 178-79, 183-86.) Here, the ALJ discussed Plaintiff's subjective complaints of depression, crying spells, anxiety, panic attacks, obsessional thoughts, difficulty getting along with others, social isolation, irritability, variable concentration and focus, difficulty sleeping, and decreased energy. (*Id.*) He also discussed Plaintiff's daily activities, including Plaintiff's reports of difficulties with several activities and her tendency to isolate from others, as well as Plaintiff's references to spending time with family and doing some household chores. (*Id.*) The ALJ acknowledged several abnormal objective examination findings including an anxious and/or depressed mood, mild irritability, obsessional thought content, racing thoughts, and difficulty staying focused on a few occasions. (*Id.* at PageID 183-86.) The ALJ compared these findings to other examinations that showed a normal and/or appropriate mood and affect, normal speech, average eye contact, average demeanor, appropriate dress and hygiene, cooperative behavior, goal-directed thought processes, intact recall, an intact attention span, and no noted observations of distractible attention or focus. (*Id.*) The ALJ found that on balance, the evidence did not support Plaintiff's allegations of symptom severity. (Decision, Doc.

19

No. 7-2 at PageID 179-86.) He concluded that the RFC would account for Plaintiff's

mental impairments by limiting Plaintiff to simple, routine tasks involving simple

decision-making, few changes, and occasional social interactions. (*Id.* at PageID 185.)

In sum, the ALJ's decision to reject the superficial interaction limitation suggested

by the consultants—and to include an occasional interaction limitation in the RFC to

account for Plaintiff's social impairment—is not an error. "The responsibility for

determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe*, 342 F. App'x

at 157 (citing 20 C.F.R. § 404.1546(c)). The ALJ's explanation shows that he considered

whether Plaintiff required a limitation to superficial social interaction and explained his

reasons for rejecting such a limitation, and his conclusions are supported by substantial

evidence. *See* 20 C.F.R. § 404.1520c. Because the ALJ's decision to include a different

limitation to account for Plaintiff's moderate impairment in social functioning is within

the permissible "zone of choice," *Mullen,* 800 F.2d at 545, the undersigned recommends

that the ALJ's decision be affirmed.

**IT IS THEREFORE RECOMMENDED THAT**:

1.      Plaintiff's Statement of Errors (Doc. No. 10) be OVERRULED;

2.      The Court AFFIRM the Commissioner's non-disability determination; and

3.      The case be terminated on the Court's docket.

>   *s/ Caroline H. Gentry*
>   Caroline H. Gentry
>   United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).